FILED
99 APR 22 AM 9:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MIKE FRANKLIN,

Plaintiff,

v.

BIRMINGHAM HIDE & TALLOW COMPANY, INC.,

Defendant.

CV 98-BU-0259-S
Lead Case

ENTERED
APR 22 1999

MIKE FRANKLIN,

Plaintiff,

v.

BIRMINGHAM HIDE & TALLOW COMPANY, INC., and OWEN VICKERS,

Defendants.

CV 98-BU-2067-S

# Memorandum Opinion

The plaintiff, Mike Franklin, filed both of the above-styled actions pursuant to the citizen suit provisions of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1365. This Court entered an order on March 22, 1999, consolidating the two actions, pursuant to Rule 42(a), Fed. R. Civ. P., in accordance with the recommendation of Magistrate Paul W. Greene's Findings and Recommendations

24

in case number CV 98-BU-2067-S. Case number CV 98-BU-0259-S is now before the Court on the motion of Defendant Birmingham Hide & Tallow Company, Inc. ("BH&T") for judgment on the pleadings. (Doc. 5). Case number CV 98-BU-2067-S is now before the Court on objections filed by Defendants BH&T and Owen Vickers to the findings and recommendations of the Magistrate. (Doc. 13). For the reasons set forth below, the Court concludes that the motion for judgment on the pleadings (Doc. 5) is due to be DENIED and the objections to the Magistrate's findings and recommendations (Doc. 13) are due to be OVERRULED, and the Court will ADOPT the Magistrate's findings and recommendations.

FACTS & BACKGROUND

BH&T operates an animal rendering[1] plant in Bessemer, Alabama. Owen Vickers is the President and Chief Executive Officer of BH&T. As a result of the Bessemer plant's operation, BH&T discharges various pollutants into Valley Creek, a navigable body of water in Jefferson County, Alabama. BH&T is thus subject to the CWA, 33 U.S.C. § 1251, et seq., which regulates the discharge of pollutants into navigable waters. Under the CWA, the discharge of pollutants into navigable waters is prohibited unless one of several exceptions applies. 33 U.S.C. § 1311(a). One such exception is where a polluter has been issued a National Pollution Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1342. The scope of the authorized exception to the prohibition in § 1311(a) is defined by the permit. A state agency may be given the authority to administer the NPDES permit system if the state regulatory scheme meets certain criteria. 33 U.S.C. § 1342(b). The Alabama Department of Environmental Management ("ADEM") is the state administrative agency responsible for issuing permits in Alabama. Sections 22-22-9(g); 22-22A-5(10), Ala. Code 1975. The holder of a state NPDES permit is subject to both federal and state enforcement for failure to comply with its terms. 33 U.S.C. §§ 1319, 1342(b)(7). In addition, private citizens may bring suit pursuant to 33 U.S.C. § 1365 to enforce effluent standards or limitations, which are defined as including violations of an NPDES permit under 33 U.S.C. § 1311(a). 33 U.S.C. § 1365(f)(1).

On March 20, 1992, ADEM issued an NPDES permit to BH&T, effective April 1, 1992,

[1]Such is the process of extracting lard or tallow, i.e., animal fat.

allowing Defendant to discharge effluent, within prescribed limits and subject to certain conditions, into Valley Creek. Although ADEM warned BH&T that its permit was due to expire on March 31, 1997, and that a renewal application had to be filed by October 2, 1996, BH&T failed to apply for a new permit until late January 1997. Consequently, BH&T's permit expired on March 31, 1997.

On October 15, 1997, while BH&T's permit renewal application was still pending, ADEM issued administrative order No. 98-014-WP ("the ADEM Order"), pursuant to § 22-22A-5(18), Ala. Code 1975. The ADEM Order found that BH&T had been discharging effluent without a permit since March 31, 1997, and that BH&T had, on approximately 40 specific occasions between January 1995 and February 1997, discharged effluent in excess of the daily maximum and monthly average limits of its permit when it was in effect. The ADEM Order also found that BH&T had failed to monitor and report on its discharges as required by its permit and that Defendant had submitted untimely, unsigned, and incomplete reports. As a result of these violations, the ADEM Order assessed a $30,000 penalty against BH&T. The ADEM Order further specified that if ADEM were to issue a new NPDES permit to it, BH&T would be required to achieve compliance with the discharge limitations of that new permit within 30 months of issuance of the ADEM Order (i.e., April 15, 2000), and BH&T would have to comply with the discharge limitations of the expired permit in the interim. On October 28, 1997, BH&T filed an appeal pursuant to § 22-22A-7(c), Ala. Code 1975, to contest the ADEM Order before the Environmental Management Commission ("EMC"), an administrative body within ADEM.    On October 31, 1997, while BH&T's appeal was pending before the EMC, ADEM issued to BH&T a new NPDES permit, ostensibly effective November 1, 1997. (Hereinafter, the NPDES permit ADEM issued on October 31, 1997, will be referred to as "the new permit," and the NPDES permit ADEM issued on March 20, 1992, will be referred to as "the old permit.") The terms and limits of the new permit were more strict than those of the old permit. However, under the terms of the ADEM Order, BH&T was allowed until April of 2000 to comply with the limits of the new permit and was required to adhere only to the limits of the expired old permit until then.

After giving notice of his intent to file a CWA citizen suit on November 18, 1997, see 33

U.S.C. § 1365(b)(1), Franklin filed his complaint in CV98-BU-0259 on February 4, 1998. In that complaint, Franklin alleges that he is "an avid outdoorsman" who has fished in, and enjoyed other recreational pursuits along, Valley Creek and that he intends to do so in the future. As the basis for his claims, Franklin lists 51 specific instances between February 1993 and November 1997 whereupon BH&T allegedly discharged effluent in excess of the daily maximum or monthly average limitations of its permit or discharged without a valid permit. [2] He also alleges that on four occasions in November 1997 BH&T failed to comply with a permit monitoring requirement. These violations, the complaint maintains, were continuous and ongoing at the time the complaint was filed. In his prayer for relief, Plaintiff requests that this Court (1) assess civil penalties against BH&T, (2) enjoin BH&T from committing future violations, (3) award Franklin costs and attorney fees, and (4) grant such other relief "as this Court deems appropriate."

After Franklin filed suit in CV98-BU-0259-S, BH&T and an EMC hearing officer finalized a privately negotiated Consent Order, which the EMC adopted by Order on April 14, 1998 ("the Consent Order"). Under the Consent Order, which by its terms "modifies" the ADEM Order, BH&T denied liability for any violations, but the parties purported to settle not only the enforcement action with respect to the specific violations that formed the basis of the ADEM Order but also the enforcement of every other BH&T violation reflected in ADEM's files up to the date of the Consent Order. The Consent Order continued the ADEM Order's stipulation that BH&T would have 30 months from October 15, 1997 to achieve compliance with the terms of the new permit and would have to comply with the terms of the old permit in the interim. The Consent Order similarly carried

[2] The Court notes that in his 60-day notice letter, Franklin stated that he intended to file a citizen suit that would include claims against BH&T for discharging without an NPDES permit "each and every day" from April 1, 1997, to November 1, 1997. However, Franklin does not in either of his complaints in these cases set forth factual allegations sufficient to indicate that he seeks to recover for any discharges that BH&T might have made between April 1, 1997, and October 14, 1997, without a valid permit. Franklin does assert in both of complaints that BH&T's old permit expired on March 31, 1997, and that ADEM issued a new permit, effective November 1, 1997, on October 31, 1997. Franklin also asserts in his complaint in CV98-BU-0259-S that BH&T discharged effluent without a permit from October 15, 1997, to October 31, 1997. However, nowhere in either complaint does Franklin allege that BH&T discharged effluent into Valley Creek between April 1, 1997, and October 14, 1997, which would have been during the period BH&T's permit was expired.

over that BH&T was obligated to pay ADEM the $30,000 civil penalty assessed by the ADEM Order, but with some modifications. The Consent Order stated that BH&T was liable to pay the $30,000, but this obligation would be suspended for 18 months (i.e., until October 14, 1999) if within 90 days of the adoption of the Consent Order (i.e., by July 13, 1998), BH&T could obtain written permission, "including conditional permission or approval," from the Jefferson County Commission to connect with the county's publicly owned treatment works ("POTW").[3] If such permission could be secured, BH&T would for 18 months be authorized to credit towards its civil penalty obligation its documented costs of construction of a sewer line connecting to the POTW.[4] BH&T further agreed in the Consent Order to pay stipulated penalties for future permit violations: $100 per violation for each violation of a daily limitation and $5,000 per month for the first 18 months following the adoption of the EMC Order and $10,000 per month thereafter for each month in which Defendant exceeded one or more monthly average permit limitations.

On July 13, 1998, BH&T secured conditional written approval from the Jefferson County Commission to allow it to tie into the county's POTW. ADEM agreed that such permission was sufficient under the Consent Order and thus suspended BH&T's obligation to pay the $30,000 penalty for eighteen months. In order to comply with the effluent limitations of both the new permit and certain pre-treatment standards that would have to be met before the county would permit BH&T to tie into the POTW, BH&T began constructing a new wastewater treatment system. BH&T claims that it had spent approximately $225,000 as of March 1, 1999, on this new treatment system, and

---

[3]By discharging into the POTW, rather than into Valley Creek, one of the nation's navigable waters, BH&T would thus become an "indirect discharger" and would not be required to hold an NPDES permit, although BH&T would still be subject to certain pretreatment standards. See 33 U.S.C. § 1317(b); United States v. City of Menominee, Mich., 727 F.Supp. 1110, 1114 (W.D. Mich. 1989); United States Environmental Protection Agency v. City of Green Forest, Ark., 921 F.2d 1394 (8th Cir. 1990).

[4]Thus, under the Consent Order, if BH&T did not to connect to the POTW for whatever reason by October 14, 1999, it would owe the full $30,000 penalty to ADEM. If it did connect to the POTW by that date and spent $30,000 or more on construction in doing so, Defendant's civil penalty obligation would be discharged. And if BH&T connected to the POTW and spent less than $30,000, it would have to pay the difference to ADEM as a penalty.

estimates that it will be completed by the summer of 1999 and at a cost of about $350,000 to $400,000. However, BH&T acknowledges that it has not made a final decision regarding whether it will actually tie into the POTW. This is the case, BH&T claims, because the county, before it allows BH&T to discharge into the POTW, is requiring BH&T both to comply with effluent limitations that are even stricter than those of the new permit and to pay "tap-in" and surcharge fees, which may make connecting to the POTW cost prohibitive. Thus, BH&T maintains, it fully intends to either comply with the limitations of the new permit and pay the $30,000 fine or tie into the POTW by the October 1999 deadline established in the Consent Order.

On August 14, 1998, Franklin filed suit against both BH&T and Vickers in CV 98-BU-2067-S. That action, which was assigned to the Magistrate, is, like CV 98-BU-0259-S, premised upon effluent discharges into Valley Creek from BH&T's Bessemer facility, but it covers alleged violations occurring between December 1997 and May 1998. Specifically, the complaint in CV 98-BU-2067-S maintains that BH&T discharged pollution in excess of daily maximum and monthly average limits of the new permit and that BH&T had failed to meet the new permit's monitoring and reporting requirements.[5] Franklin further maintains that these violations are continuing and ongoing.

It appears from the documents submitted by the parties that BH&T considers the Consent Order to have relieved it of complying with the terms of the new permit until April 15, 2000, and that BH&T has, therefore, been attempting to comply only with the limits and conditions of the old permit. BH&T's monitoring reports for discharges between April and December 1998 indicate, however, that during that period following the EMC's adoption of the Consent Order, BH&T has on a number of occasions discharged effluent in excess of the daily maximum limits of the old permit. In April, September, October, and November, 1998, BH&T exceeded the old permit's daily limitation for fecal coliform a total of five times, and in August 1998, BH&T exceeded the daily limit

[5]Franklin claims that, while the ADEM and Consent Orders purport to allow BH&T to ignore the limits of the new permit until April 15, 2000, BH&T was and is required to comply with the new permit limits and conditions from the effective date listed on its face: November 1, 1997.

for total suspended solids.  For each of these daily limit violations, BH&T paid $100 to ADEM, the stipulated penalty amount for these violations under the Consent Order.

On May 21, 1998, BH&T filed a motion pursuant to Rule 12(c), Fed. R. Civ. P., for judgment on the pleadings in CV 98-BU-0259-S.  On September 2, 1998, Vickers filed a motion  pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss Franklin's claims against him individually in CV 98-BU-2067-S, while it was before the Magistrate, for failure to state a claim upon which relief can be granted.  Also on September 2, 1998, BH&T filed a motion with the Magistrate to dismiss the claims against BH&T in CV 98-BU-2067-S, arguing that those claims were already encompassed within the pending claims in CV 98-BU-0259-S, as Franklin had asserted in that action that BH&T's permit violations were continuing and ongoing.  On March 3, 1999, the Magistrate entered findings and recommendations in CV 98-BU-2067-S, denying the motions to dismiss of both BH&T and Vickers. On March 17, 1999, BH&T and Vickers filed objections to those findings and recommendations.

At least one of the issues raised in the defendants' objections to the Magistrate's findings and recommendations are common.  Moreover, the Court's disposition of many of the issues with respect to the motion for judgment on the pleadings in CV98-BU-0259-S will also apply to the claims against BH&T in CV98-BU-0259-S.  The Court will, therefore, dispose of both the motion for judgment on the pleadings and the objections to the Magistrate's findings and recommendations in this memorandum opinion.

## CONTENTIONS AND ANALYSIS

### I. BH&T'S MOTION FOR JUDGMENT ON THE PLEADINGS IN CV98-BU-0259-S

In its motion for judgment on the pleadings in CV98-BU-0259-S, brought pursuant to Rule 12(c), Fed. R. Civ. P., BH&T makes the following arguments: (A) that 33 U.S.C. § 1319(g)(6)(A)(ii) statutorily precludes Franklin from bringing his claims because ADEM has already undertaken administrative action for the same violations; (B) that ADEM's enforcement action has mooted Franklin's claims, as to both monetary and injunctive relief; (C) that Franklin failed to comply with the mandatory notice requirements of 33 U.S.C. § 1365(b)(D); and (D) that this Court should dismiss the claims in CV98-BU-0259-S under the "Burford abstention doctrine."

Under Rule 12(c), Fed. R. Civ. P., "[j]udgment on the pleadings is appropriate when 'no issues of material fact exist, and the movant is entitled to judgment as a matter of law.'" Slagle v. ITT Hartford, 102 F.3d 494, 497 (11th Cir. 1996), quoting Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir.1996). The complaint may not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Slagle, at 497, quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957) and also citing Hartford Fire Ins. Co. v. California, 509 U.S. 764 (1993). A court reviewing a judgment on the pleadings, must accept the facts in the complaint as true and view them in the light most favorable to the nonmoving party. Slagle, at 497.

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion is to be treated as a motion for summary judgment and disposed of as provided in Rule 56, Fed. R. Civ. P., and all parties must be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56. Rule 12(c), Fed. R. Civ. P.; Latecoere Intern., Inc. v. U.S. Dept. of Navy, 19 F.3d 1342 (11th Cir. 1994). The procedural safeguards and notice requirements of Rule 56 are strictly enforced in this circuit when a court "converts" a Rule 12 motion to dismiss into a Rule 56 motion for summary judgment due to the consideration of evidence beyond the complaint. See Jones v. Automobile Ins. Co. of Hartford, Connecticut, 917 F.2d 1528, 1532-33 (11th Cir. 1990). Thus, before a district court may convert a motion to dismiss into a motion for summary judgment, it must ordinarily notify the parties and allow the parties ten days to submit any relevant evidence and arguments in support of or opposition to the merits. Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A., 104 F.3d 1256, 1266 (11th Cir. 1997), citing Marine Coatings of Alabama, Inc. v. United States, 792 F.2d 1565, 1568 (11th Cir.1986), rev'd on other grounds, 932 F.2d 1370 (11th Cir.1991). However, this Circuit has recognized an exception to the ten days notice requirement when the parties are aware of the court's intent to consider matters outside the record and have presented all the materials and arguments they would have if proper notice had been given. Id. (citations omitted).

A. STATUTORY PRECLUSION UNDER 33 U.S.C. § 1319(g)(6):

BH&T first asserts that it is entitled to judgment on the pleadings on Franklin's claims in CV

98-BU-0259-S because they are, BH&T argues, precluded under 33 U.S.C. § 1319(g)(6)(A)(ii) by ADEM's ongoing administrative enforcement action against BH&T. 33 U.S.C. § 1365(a) generally authorizes private citizens to sue those violating "an effluent standard or limitation" under the Clean Water Act. However, 33 U.S.C. § 1319(g)(6)(A) sets out certain instances where a citizen may not bring a "civil penalty action" under § 1365(a) because such action would be duplicative of federal or state enforcement for the same violations. 33 U.S.C. § 1319(g)(6)(B) provides, in turn, that there are certain circumstances in which § 1319(g)(6)(A) does not apply.

The citizen suit provision of the Clean Water Act, 33 U.S.C. § 1365, states, in relevant part:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf–
> (1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator [of the Environmental Protection Agency] or a State with respect to such a standard or limitation....
>
> The district courts shall have jurisdiction ... to enforce such an effluent standard or limitation, or such an order, as the case may be, and to apply any appropriate civil penalties under section 1319(d) of this title.

Section 1319(g)(6) provides, in relevant part:

> (A) Limitation on actions under other sections
> [A]ny violation–
> ...
> (ii) with respect to which a State has commenced and is diligently prosecuting an action under a State law comparable to [§ 1319(g)], . . .
> shall not the subject of a civil penalty action under . . . section 1365 of this title.
>
> (B) Applicability of limitation with respect to citizen suits
> The limitations contained in subparagraph (A) on civil penalty actions under section 1365 of this title shall not apply with respect to any violation for which–
> (i) a civil action under section 1365(a)(1) of this title has been filed prior to commencement of an action under [§ 1319(g)] ....

BH&T argues that ADEM's administrative enforcement against it encompasses all of the violations forming the basis of Franklin's suit in CV98-BU-0259-S and that such enforcement indicates that ADEM "has commenced and is diligently prosecuting an action under a State law comparable to"

33 U.S.C. § 1319(g). Thus, BH&T claims, § 1319(g)(6)(A)(ii) precludes those claims from being brought in a citizen suit. Franklin argues, however, that in order to resolve this issue, the Court must necessarily consider evidence beyond the complaint and that BH&T's motion would therefore have to be treated as a motion for summary judgment under Rule 56, Fed. R. Civ. P., with all of its attendant protections. Furthermore, Franklin points out that he has not been permitted to conduct discovery on the merits in this case, and he claims, therefore, that he should be permitted to conduct discovery on whether the State's prosecution of BH&T was "diligent" within the meaning of § 1319(g)(6)(A)(ii), before judgment is entered against him.

The Court acknowledges that it would have to consider matters outside the pleadings and would therefore have to treat BH&T motion on this issue as one for summary judgment. This leads the Court to find that it would be more appropriate to allow Plaintiff to conduct the discovery it requests with respect to the "diligence" of ADEM's prosecution of BH&T before ruling upon whether BH&T is entitled to summary judgment in CV98-BU-0259-S. This is the case because there exist disputed issues of material fact with regard to whether the ADEM prosecution of BH&T for its permit violations violated statutory and regulatory standards and thus might be considered something less than "diligent." Specifically, the Court finds questions of material fact outstanding regarding (1) whether ADEM considered all requisite statutory penalty factors, particularly the economic benefit that might have accrued to BH&T for its alleged discharge violations, in setting the $30,000 penalty obligation imposed on BH&T[6] and (2) how many violations are reflected in the penalty, based upon whether ADEM considered BH&T's monthly average violations to constitute merely a single violation or multiple violations equal to the number of days in the month.[7]

---

[6]See § 22-22A-5(18)(c), Ala. Code 1975.

[7]BH&T admits that the Eleventh Circuit and the EPA consider monthly average violations as a violation for each day of the month in which they occur for the purpose of assessing administrative and judicial civil penalties under the CWA itself. See Atlantic States Legal Foundation v. Tyson Foods, Inc., 897 F.2d 1128, 1138-40 (11th Cir. 1990). But BH&T maintains that ADEM is not bound to follow that interpretation in administering the Alabama Environmental Management Act, §§ 22-22A-1, et seq., Ala. Code 1975, under which the penalty was assessed against BH&T. That may be so, but it is not clear from the materials submitted to the Court that ADEM does not generally or did not in this case follow the same

BH&T argues, however, that whether ADEM considered the statutory factors set out in § 22-22A-5(18)(c) in assessing the penalty against BH&T and how many violations are encompassed by that penalty are not material issues of fact and thus do not bar the granting of summary judgment at this time. The basis of BH&T's position is that the Consent Order that finalized the $30,000 penalty obligation was reached through a settlement compromise between BH&T and ADEM, in which BH&T emphasizes that it did not admit that it was liable for any violations. Therefore, BH&T claims, ADEM was not bound to consider either the penalty factors or the number of potential violations in agreeing to the penalty amount.

The Court acknowledges that an agreed penalty amount reached through a compromise settlement is not the same as a penalty assessed on the merits and therefore the two cannot be evaluated by the same standards. Cf. United States v. St. Louis Metropolitan Sewer Dist., 952 F.2d 1040, 1044 (8th Cir. 1992) (holding that where the EPA Administrator and a defendant submitted a consent decree settling alleged CWA violations for district court approval, the court was not required to evaluate the decree under the statutory penalty assessment factors of 33 U.S.C. § 1319(d), because the decree was not a judgment on the merits; instead the district court was to review the settlement only "for fairness, reasonableness, and adequacy"). The Court also agrees with BH&T that it would be unreasonable and inappropriate to find that ADEM's prosecution was not "diligent" for the purposes of § 1319(g)(6)(A) simply because some compromise was reached between ADEM and BH&T and BH&T could be considered to have prevailed in some fashion in its appeal of the ADEM Order. See Arkansas Wildlife Federation v. ICI Americas, Inc., 29 F.3d 376, 380 (8th Cir. 1994). The Court does not believe, however, that just because the penalty amount was reached through a settlement representing a compromise that ADEM's actions are immune from an examination of

---

rule as the Eleventh Circuit and the EPA with respect to counting monthly average violations. Indeed, the different amounts of the stipulated penalties in the Consent Order could indicate that ADEM could in fact follow the EPA violation calculation method endorsed by the Eleventh Circuit: the penalty for a daily maximum violation is only $100, but the penalty for monthly average violations is $5,000 initially and later rises to $10,000. ADEM's discretion is confined by statute to assess a $100 minimum penalty for "each violation" it finds, § 22-22A-5(18)(c), and if ADEM did not seek to impose the minimum penalty for each violation, it would suggest less than diligence in its prosecution.

whether they constituted a diligent prosecution for the purposes of § 1319(g)(6)(A)(ii). Of course, in deciding what penalty amount would be at least minimally adequate to settle the alleged violations, ADEM could properly consider the likelihood that it could prove the violations alleged in the ADEM Order and what the costs would be to do so before the EMC and any possible subsequent judicial appeal of a final administrative order under § 22-22A-7(c)(6), Ala. Code 1975. However, in this case it is clear that ADEM would have had to consider, pursuant to § 22-22A-5(c), the penalty factors of and number of violations in calculating the $30,000 penalty assessed in the ADEM Order. This amount was carried over in the Consent Order, which encompassed all of the violations referenced in the ADEM Order. Further, while BH&T did not in the Consent Order admit liability for any violations, it does not appear from the evidence submitted to this Court that BH&T had any substantial grounds to deny that it had committed virtually all of the past permit violations alleged in the ADEM Order. BH&T clearly notified ADEM in its notice of appeal of the ADEM Order that BH&T believed the future compliance schedule set out in the ADEM Order was overly burdensome and that it was unfair, in BH&T's view, to require BH&T to pay penalties for past violations when it was going to have to spend large sums to upgrade its wastewater treatment facility to comply in the future with its permit. However, BH&T did not substantially dispute either that its Discharge Monitoring Reports reflected the effluent discharges in excess of its permit or that it had discharged without a permit from March 31, 1997, to November 1, 1997, as alleged in the ADEM Order, although BH&T did specifically claim that it had not committed several of the alleged violations with respect to submitting untimely monitoring reports. Given these circumstances surrounding the agreement to enter into the Consent Order, the Court does not believe that ADEM could, consistent with a "diligent prosecution," simply disregard entirely the statutory factors and the number of potential of violations in determining what minimum amount could be adequate to settle the alleged violations. Accordingly, the Court will order that Plaintiff be permitted 60 days to conduct discovery on issues related to the "diligence" vel non of ADEM's penalty action prosecution before the Court rules upon a motion for summary judgment.

B. MOOTNESS

BH&T next contends that it is entitled to judgment because Franklin's claims for civil penalties and injunctive relief in CV98-BU-0259-S have been, BH&T argues, mooted by ADEM's enforcement action. BH&T argues that Franklin's claims are moot because in the Consent Order ADEM has asserted "continuing jurisdiction" over BH&T's discharges into Valley Creek and has made a finding that BH&T's compliance with that Order "will result in the elimination of any threat of continuous or intermittent violation . . . and that there will be no reasonable likelihood" that BH&T will commit violations in the future. More specifically, BH&T contends that ADEM's assessment of penalties for past violations and inclusion of stipulated penalty provisions for future violations in the Consent Order have mooted the claims for civil penalties. As to the requested injunctive relief, BH&T maintains that it is also moot because, it alleges, there are no ongoing violations to abate. The Court concludes that these arguments are unavailing.

In Adler v. Duval County School Bd., 112 F.3d 1475, 1477 (11th Cir. 1997), the Eleventh Circuit Court of Appeals generally explained the doctrine of mootness as follows:

> Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of certain "Cases" and "Controversies." U.S. Const. art. III, § 2. The doctrine of mootness is derived from this limitation because an action that is moot cannot be characterized as an active case or controversy. See Church of Scientology Flag Serv. Org. v. City of Clearwater, 777 F.2d 598, 604 (11th Cir.1985), cert. denied, 476 U.S. 1116 [ ] (1986). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Powell v. McCormack, 395 U.S. 486, 496 [ ] (1969). Any decision on the merits of a moot case would be an impermissible advisory opinion. See Church of Scientology Flag Serv. Org., 777 F.2d at 604 (citing Hall v. Beals, 396 U.S. 45, 48 [ ] (1969) (per curiam)).

The Court of Appeals has also directly discussed the doctrine of mootness in the context of relief requested in citizen suits brought under the CWA. In Atlantic States Legal Foundation v. Tyson Foods, Inc., 897 F.2d 1128 (11th Cir. 1990), the Court of Appeals, interpreting the Supreme Court's decision in Gwaltney of Smithfield v. Chesapeake Bay Foundation, Inc., 484 U.S. 49 (1987), found that a plaintiff's request in a citizen suit for injunctive relief aimed at halting ongoing and future violations of the CWA would be moot where the defendant showed that it was " ' "absolutely clear

that the allegedly wrongful behavior could not reasonably be expected to recur." ' " Tyson Foods, 897 F.2d at 1134, quoting Gwaltney, 484 U.S. at 66, quoting United States v. Phosphate Export Ass'n, Inc., 393 U.S. 199, 203 (1968). This was so, the Tyson Foods Court held, because the defendant had completed upgrades in its wastewater treatment operations, which had allowed the defendant to come into compliance with the terms of its permit approximately six months after the plaintiff had filed its judicial complaint and there was no indication that the operations would not be expected to continue to work. While it was argued that injunctive relief was not moot because the defendant continued to discharge, the Tyson Foods Court expressly rejected that a defendant would only be able to escape an injunction by ceasing its discharges altogether, for, it noted, "[t]he law does not require a defendant to show that there is no conceivable chance that a future violation will occur, but only that 'there is no reasonable expectation that the wrong will be repeated.' " 897 F.2d at 1135, quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953). The Tyson Foods Court held, however, that although the plaintiff's request for injunctive relief was moot, his demand for civil penalties payable to the United States Treasury, for now past violations that were ongoing at the time the complaint was filed, was nonetheless still viable. See 897 F.2d at 1134-36. It should be recognized, however, that Tyson Foods does not address the issue of whether civil penalties payable to the government, if such remains the only relief still available to a citizen-suit plaintiff, are sufficient to redress the plaintiff's injury and confer standing under Article III of the United States Constitution.[8]

[8]After the Eleventh Circuit's decision in Tyson Foods, the United States Supreme Court held in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998), that a plaintiff who brought suit for wholly-past violations under the citizen-suit provision of the Emergency Planning Community Right-To-Know Act ("EPCRA"), 42 U.S.C. § 11046(a)(1), lacked Article III standing to pursue the action, on the grounds that injunctive relief was unavailable because there was no allegation of ongoing or imminent violations of the Act and the only form of relief still potentially viable--payment of civil penalties for past violations--would not redress any injury of the plaintiff, because such penalties would be payable to the United States Treasury, not to the plaintiff. The Fourth Circuit Court of Appeals then applied this ruling to a case involving the CWA, holding that where injunctive relief was no longer available, the plaintiffs' citizen-suit for civil penalties was moot because the penalties payable to the government were insufficient to redress the plaintiffs' injuries. See Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 149 F.3d 303 (4th Cir. 1998), cert. granted, ___ U.S. ___, 119 S.Ct. 1111 (1999). These cases, which are further discussed on pages 23-27, post, suggest to this Court that the Eleventh Circuit's ruling in Tyson Foods that the mooting of injunctive relief does not prevent a plaintiff from maintaining a citizen suit for

Examining the submissions in the instant case, the Court concludes that Franklin's claims for civil penalties and equitable relief are not at this time moot. The Court is unpersuaded that either ADEM's claims of maintaining "continuing jurisdiction" over BH&T's discharges into Valley Creek or ADEM's finding concerning the improbability of future violations once BH&T complies with the Consent Order renders any relief sought by Franklin moot. A defendant that is alleged to have committed violations of its NPDES permit cannot be insulated from a citizen suit under the CWA simply because a state administrative environmental agency purports to retain "jurisdiction" over the matter. In fact, it would seem that a state environmental agency charged with implementing the CWA and analogous state legislation always has the legal authority and, indeed, a continuing duty to enforce the requirements of NPDES permits it issues, with or without a proclamation of "continuing jurisdiction." And, for similar reasons, the Court does not find that Franklin's citizen suit is moot because the Consent Order provides for the payment of stipulated penalties for future violations, as BH&T's position on this issue seems to simply transplant its argument on preclusion under § 1319(g)(6)(A) into a mootness setting. The fact that ADEM has continuing jurisdiction and has set stipulated penalties does not indicate that " 'it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' " Tyson Foods, 897 F.2d at 1134, quoting Gwaltney, 484 U.S. at 66. And that is BH&T's burden to show mootness. Id. Indeed, the evidence before the Court belies BH&T's claim that there are no ongoing violations, as it is undisputed that BH&T has continued to violate the terms of even the old permit.[9] Moreover, even if it could be said that BH&T had ceased its wrongful conduct after Franklin filed his citizen suits, that would not necessarily render the case

---

civil penalties for past violations may no longer be sound.

[9]Moreover, there is still some question as to whether BH&T has committed additional violations under the terms of the new permit. BH&T contends that it is not required under the Consent Order to comply with the terms of the new permit until April of 2000. However, Franklin has argued, somewhat obliquely in CV98-BU-0259-S and expressly in CV98-BU-2067-S, that BH&T became obligated to comply with the terms of the new permit on its effective date, November 1, 1997, and that ADEM was without the authority to extend the validity of the old permit as it did in this case. The Court considers this issue to be more germane to Franklin's claims in CV98-BU-2067-S, which have not been fully briefed and argued in this Court. Thus, the Court will not at this time decide whether or not ADEM could properly extend the validity of the terms and conditions of the old permit.

moot, as voluntary cessation of a challenged practice renders a case moot only if there is also no reasonable expectation that the challenged practice will resume after the lawsuit is dismissed. See Jews For Jesus, Inc. v. Hillsborough County Aviation Authority, 162 F.3d 627, 629 (11th Cir. 1998).

However, the Court agrees that Franklin's requested injunctive relief will indeed become moot if BH&T's does actually connect to the POTW, as BH&T would not then be required to even have a NPDES permit, rendering future permit violations seemingly impossible. See Comfort Lake Ass'n, Inc. v. Dresel Contracting, Inc., 138 F.3d 351, 355 (8th Cir. 1998) (holding that plaintiff's request for injunctive relief was moot where evidence indicated that NPDES permit, which governed effluent discharges from a construction site, had been terminated following the end of construction). **The Court also would mention that the injunctive relief sought, and perhaps both the cases in their entirety,[10] will also likely become moot if at any time before the final order is entered in this case BH&T's its new wastewater treatment facilities become operational and it is demonstrated that they allow BH&T to comply fully and consistently with the terms and conditions of the new permit.** See Tyson Foods, 897 F.2d at 1135. However, neither of these circumstances has yet come to pass. BH&T has not connected to the POTW, and BH&T candidly admits that it may not ever do so because the conditions imposed by the government may render the costs prohibitive. Similarly, BH&T concedes that it has not completed its new wastewater treatment facilities, although it claims that it anticipates their completion by the summer of 1999 and that the facilities will allow BH&T to comply fully with the terms of the new permit. Because it has not been shown that BH&T has connected to the POTW or that BH&T'S new wastewater treatment facilities have been completed and allow full compliance with the new permit, the Court concludes that the requested injunctive relief is not now moot.

C. NOTICE REQUIRMENTS OF 33 U.S.C. § 1365(b)

Citizens may not bring suit under the CWA unless and until they have given 60 days' notice of their intent to sue to the alleged violator (as well as to the Administrator of the EPA and the state). §33 U.S.C. 1365(b)(1)(A). The purpose of this notice requirement, the Supreme Court explained

[10] See the discussion on pages 23-27, post.

in Gwaltney, "is to give [the alleged violator] an opportunity to bring itself into compliance with the Act and thus likewise render unnecessary a citizen suit." 484 U.S. at 60. The 60-day notice requirement of §33 U.S.C. 1365(b) is a mandatory condition precedent to the filing of a citizen suit under the CWA. National Environmental Foundation v. ABC Rail Corp., 926 F.2d 1096, 1097 (11th Cir. 1991). If a plaintiff fails to comply with this notice requirement where it is applicable, the district court is required to dismiss the action. Id. at 1097-98. EPA regulations give further guidance on the contents of the notice, at 40 CFR § 135.3:

> (a) Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to constitute a violation, the person or persons responsible for the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.
>
> . . . .
>
> (c) Identification of counsel. The notice shall state the name, address, and telephone number of the legal counsel, if any, representing the person giving the notice.

BH&T acknowledges that Franklin sent to it and the appropriate government authorities a 60-day notice letter of his intent to sue BH&T in CV98-BU-0259-S. But BH&T contends that Franklin's notice letter was not sufficiently specific to comply with the requirements of 40 C.F.R. § 135.3(a).

As an initial matter, the Court notes that BH&T is not entitled to judgment on the pleadings on this issue because the complaint in CV98-BU-0259-S alleges that he gave notice of the violations included in his complaint and of his intent to sue on November 18, 1997. However, BH&T has submitted in its supporting materials Franklin's 60-day notice letter in question, and the Court will consider the letter and convert BH&T's motion for judgment on the pleadings on this issue into a motion for summary judgment. Rule 12(c), Fed. R. Civ. P.; Latecoere Intern., Inc. v. U.S. Dept. of Navy, 19 F.3d 1342 (11th Cir. 1994).

In his letter dated November 18, 1997, Franklin's counsel advised BH&T that "Mike Franklin" intended to file suit against it under the citizen suit provisions of the Clean Water Act for alleged

violations of BH&T's NPDES permit. The letter expressly set out the name, address, and telephone number of Franklin's counsel and also mentioned that the allegedly violative discharges came from BH&T's Bessemer facility and concerned BH&T's Alabama Permit No. 0002704. In describing more the specific violations for which he intended to file suit, Franklin stated in pertinent part as follows:

> (1) discharges of pollutants without a permit each and every day from April 1, 1997, until November 1, 1997;[11]
>
> . . .
>
> (3) all discharges of pollutants of the Permit which are identified, described, and otherwise set out in [the ADEM Order]
>
> (4) all discharges of pollutants in violation of applicable terms and conditions of the Permit from March 14, 1989, to the present which are not included in [the ADEM Order] but which are identified and described by Discharge Monitoring Reports [up to the present] prepared for or on behalf of [BH&T] and submitted to ADEM. Non-exclusive examples of the above described violations are as follows:
> January 1997 - exceeding daily maximum of BOD twice;
> February 1997 - exceeding daily maximum for BOD once
> exceeding monthly average for TRC once
> exceeding daily maximum for TSS once
> exceeding daily maximum for NH3N once.
>
> (5) all ongoing and continuing discharges of pollutants in violation of the Permit occurring from the date of this notice through the pendency of the suit to be filed in this matter;
>
> (6) all failures to monitor discharges and to report monitoring results as required by the Permit and as identified in [the ADEM Order] and for any additional such violations occurring from October 15, 1997, through the pendency of the suit to be filed in this matter.

BH&T claims that the Eleventh Circuit, in National Environmental Foundation, supra, required strict adherence to the notice requirements of 33 U.S.C. § 1365(b). Section 1365(b), however, only specifies that notice must be given sixty days before a citizen suit may be instituted and

[11] See note 1, supra.

defers to the Administrator of the EPA to prescribe by regulation the manner in which the notice is to be given. Moreover, the Court in National Environmental Foundation required only strict adherence to the 60-day rule and is silent as to the requirements of 40 C.F.R. § 135.3. See id. at 1097-98.

BH&T complains in its brief that Franklin's notice letter is fatally deficient in that many of its allegations fail to "identify dates of alleged violations of the specific standard, limitation, or order [Franklin] alleges [BH&T] violated." BH&T fails to recognize, however, that 40 C.F.R. § 135.3 does not necessarily require the notice to include such information. Rather, those regulations merely require "sufficient information to permit the recipient" to make such determinations. (Emphasis added). While the Eleventh Circuit has not yet interpreted § 135.3, other circuits have adopted a flexible approach and not required notice to contain a violation-by-violation accounting. See, e.g., Atlantic States Legal Foundation v. Stroh Die Casting Co., 116 F.3d 814, 820 (7th Cir.) (citing Public Interest Research Group of New Jersey v. Hercules, Inc., 50 F.3d 1239, 1252 (3rd Cir. 1995)), cert. denied, ___ U.S. ___, 119 S.Ct. 442 (1997). In the instant case, Franklin's notice letter stated, with respect to the violations for which he actually filed suit, that he intended to file suit regarding the violations alleged in the ADEM Order, which lists violations on a date by date and parameter by parameter basis. Franklin's notice also references the DMR reports prepared by BH&T, which also set out effluent parameters and actual discharges. The Court concludes that this would be sufficiently specific to allow BH&T to discern the violations that would be the subject of Franklin's citizen suit.

BH&T also claims that Franklin's notice is insufficient because of its failure to identify the address, telephone number, and full name of Franklin. However, under § 135.3(a), the notice must only provide enough information to allow the recipient to obtain the plaintiff's full name, address, and telephone number. Here, the notice indicated that Franklin could be obtained through his counsel and listing counsel's specific name, address, and telephone number. Thus, BH&T argument on this ground fails.

D. "BURFORD" ABSTENTION

BH&T finally argues in its motion for judgment on the pleadings that the Court should abstain

from this case under the doctrine enunciated in Burford v. Sun Oil Co., 319 U.S. 315 (1943). The Supreme Court has arrived at the following "distillation" of the Burford abstention doctrine:

> Where timely and adequate state-court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

New Orleans Public Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989), quoting Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 814 (1976).

BH&T cites no specific case in which a federal court declined to hear a CWA citizen suit based upon Burford abstention and the Court has not found one. The Court determines that it is not due to abstain from the case based upon that doctrine, finding persuasive the following passage from Culbertson v. Coats American, Inc., 913 F.Supp. 1572 (N.D. Ga. 1995):

> The Burford abstention doctrine is concerned with protecting complex state administrative processes from undue federal interference. The CWA provides for the enforcement of federal standards through the combined efforts of state agencies, federal agencies, and private citizens. As discussed more fully below, the CWA itself precludes citizen suits in certain instances of state or federal action. See §§33 U.S.C. 1319(g)(6)(A), 1365(b). The statutory scheme thus contemplates citizen suits as a supplement to state government action. The Burford abstention doctrine is therefore not implicated by the present citizen suit under the CWA.    Student Pub. Interest Research Group of New Jersey, Inc. v. P.D. Oil & Chem. Storage, Inc., 627 F.Supp. 1074, 1085 (D.N.J.1986); Brewer v. City of Bristol, 577 F.Supp. 519, 523-24 (E.D. Tenn.1983)

913 F.Supp. at 1578 (further citations omitted); see also Natural Resources Defense Council, Inc. v. Outboard Marine Corp., 692 F.Supp. 801, 810 (N.D. Ill. 1988). BH&T's motion on this ground is therefore due to be denied.

## II. BH&T AND VICKERS'S OBJECTIONS TO THE MAGISTRATE'S REPORT

Vickers first argues in the objections to the magistrate's findings and recommendations that the claims in CV98-BU-2067-S against him individually should be dismissed because BH&T, rather

than himself personally, was the holder of the NPDES permit. BH&T and Vickers both argue that Franklin lacks standing under Article III of the United States Constitution to bring claims for civil penalties under the CWA. BH&T raises this argument in both its objections to the Magistrate's findings in CV98-BU--2067-S and in its Rule 12(c), Fed. R. Civ. P., motion for judgment on the pleadings in CV98-BU-0259-S. Vickers, who is not a named defendant in CV98-BU-0259-S, raises this issue in the objections to the magistrate's findings only.

A United States District Court Judge may designate a United States Magistrate Judge to conduct hearings, including evidentiary hearings, in order to submit proposed findings of fact and recommendations for the disposition of certain pretrial matters. See §28 U.S.C. 636(b)(1)(B) & (C); Local Rule 72.1(b)(4)(B); (c) and the General Order of Reference dated July 23, 1996, as amended May 8, 1998. Within ten days after being served with a copy of the Report and Recommendation, any party may file written objections to the proposed findings and recommendations. Id. When a party makes a timely objection to a Report and Recommendation by a Magistrate Judge, the determination is subject to de novo review by the district court. Creech v. Apfel, 12 F.Supp.2d 1293, 1296 (M.D. Fla. 1998) (citation omitted). However, portions of the Report and Recommendation that are not objected to will be evaluated by the district court judge under a clearly erroneous standard of review. Id.

A. THE CLAIMS AGAINST VICKERS INDIVIDUALLY

Vickers argued before the Magistrate in his Rule 12(b)(6) motion to dismiss that he cannot, in his individual capacity, be held civilly liable for the violations of BH&T's NPDES permit alleged in CV98-BU-2067-S because it is BH&T, rather than Vickers himself, that is the holder of the permit in question and he is simply a corporate officer of BH&T. The Magistrate, however, rejected this contention, determining that Vickers could be liable in his individual capacity under the CWA and recommending that Vickers's Rule 12(b)(6) motion to dismiss for failure to state a claim be denied. Vickers, in turn, filed an objection to this finding and recommendation.

Title 33 of the United States Code, Section 1365, permits a citizen to commence a civil action on his own behalf against "any person . . . who is alleged to be in violation of . . . an effluent standard

or limitation" under the CWA. Section 1319(a)(3) of the same title similarly requires the Administrator of the EPA to take action against "any person" who he finds is in violation of any permit issued pursuant to the CWA. The term "person," in turn, is defined as "an individual, corporation, partnership, association, State, municipality, commission, or political subdivision of a State, or any interstate body." 33 U.S.C. § 1362(5). While the Eleventh Circuit Court of Appeals has not spoken directly to the issue, a number of courts have found that corporate officers who are responsible for violations of public health statutes, including the CWA, may be both civilly and criminally liable in their in their individual capacity for such violations, not withstanding that the wrongful actions were undertaken on behalf of a corporate entity. See United States v. Gulf Park Water Co., 972 F.Supp. 1056 (S.D. Miss. 1997); United States v. Mac's Muffler Shop, Inc., 1986 WL 15443 (N.D. Ga. 1986) and cases cited therein. Moreover, it is well-established under traditional tort principles that personal participation by a corporate employee, officer, or director in the wrongful activities of a corporation is sufficient to make the individual, as well as the corporation, substantively liable for a tort. See Gulf Park Water Co., 972 F.Supp. at 1063-64; Delong Equipment Co. v. Washington Mills Abrasive Co., 840 F.2d 843, 851 (11th Cir. 1988); Inter-Connect, Inc. v. Gross, 644 So.2d 867 (Ala. 1994).

Vickers concedes that he is an "individual," but he points out that the CWA's definition of "person" in § 1362(5) distinguishes between individuals and corporate entities and does not specifically include corporate officers. Moreover, he emphasizes, the criminal penalties section of the CWA, 33 U.S.C. § 1319(c)(6), specifically states that "the term 'person' shall mean, in addition to the definition contained in section 1362(5) of this title, any responsible corporate officer." By including such language only in the criminal provision of § 1319(c), Vickers argues, Congress has manifested its intent that corporate officers should only be held criminally responsible under the CWA where the requisite scienter is shown, but should not civilly liable in their individual capacity. Vickers cites in support Illinios v. Commonwealth Edison Co., 490 F.Supp. 1145 (N.D. Ill. 1980); Illinois v. Celotex Corp., 516 F.Supp. 716 (C.D. Ill. 1981). However, this Court is not inclined to find those authorities persuasive, for as the Sixth Circuit Court of Appeals has noted,

> "[T]he rationale for holding corporate officers criminally responsible for acts of the corporation, which could lead to incarceration, is even more persuasive where only

> civil liability is involved, which at most would result in a monetary penalty. The fact that a corporate officer could be subjected to criminal punishment upon a showing of a responsible relationship to the acts of a corporation that violate health and safety statutes renders civil liability appropriate as well."

United States v. Hodges X-Ray, Inc., 759 F.2d 557, 561 (6th Cir. 1985).

The complaint in CV 98-BU-2067-S alleges that Vickers, as the president and CEO of BH&T, was and is responsible for its day-to-day operations and had ultimate authority to determine production levels for BH&T and what steps were to be taken to comply with its NPDES permit. The complaint further asserts that his decisions directly facilitated the alleged violations because he allowed production levels to exceed the capacity of BH&T's wastewater treatment system. On a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., these allegations of the complaint are to be taken as true and should be dismissed only "when the movant demonstrates 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" United States v. Pemco Aeroplex, Inc., 166 F.3d 1311, 1313 (11th Cir. 1999), quoting Conley v. Gibson, 355 U.S. 41, 45-46, (1957). Given this liberal standard and the absence of any authority in this circuit holding that Vickers cannot be held civilly liable in his individual capacity, the Court agrees with the Magistrate that Vickers's motion to dismiss was due to be denied. Accordingly, the Court will overrule Vickers's objection to the Magistrate's findings and recommendation on this issue.

B. ARTICLE III STANDING TO PURSUE CIVIL PENALTIES UNDER THE CWA

In their motion to dismiss before the magistrate in CV 98-BU-2067-S, BH&T and Vickers argue that Franklin lacks standing under Article III of the United States Constitution to pursue his claims for civil penalties. BH&T has made the same argument to this Court in its motion for judgment on the pleadings in CV 98-BU-0259-S. More specifically, the defendants, relying upon the United States Supreme Court's decision in Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 118 S.Ct. 1003 (1998), and the Fourth Circuit Court of Appeals' opinion in Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 149 F.3d 303 (4th Cir. 1998), cert. granted, ___ U.S. ___, 119 S.Ct. 1111 (1999), claimed that Franklin lacks standing to pursue his claims for civil penalties

because such, the defendants maintain, would not redress any injury attributable to him. The Magistrate Judge found that Steel Co. and Laidlaw are distinguishable, determined that Franklin could pursue his claims for civil penalties, and recommended that the defendants' motion to dismiss on this ground should be denied.

Title 33, § 1319(d) of the United States Code provides that any person who violates any condition or implementing limitation of a permit issued pursuant to the CWA shall be subject to a civil penalty not to exceed $25,000 per day for such violation. Section 1365 of that same title authorizes a citizen-suit plaintiff to pursue both civil penalties and appropriate injunctive relief, as the statute provides that the district courts shall have jurisdiction in such cases to apply any appropriate civil penalties under § 1319(d). However, where a citizen-suit plaintiff successfully argues that a polluter is liable to pay civil penalties under § 1319(d), the plaintiff does not himself receive the penalty amount awarded. Rather, the defendant is liable to pay the civil penalties to the United States Treasury. See Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc., 897 F.2d 1128, 1131 n.5 (11th Cir. 1990).

In Steel Co., however, the Supreme Court held that a citizen-suit plaintiff lacked standing under Article III to pursue an action for wholly-past violations of the Emergency Planning and Community Right-To-Know Act of 1986 ("EPCRA") because the only form of relief available to the plaintiff, civil penalties payable to the United States Treasury, would not redress any injury attributable to the plaintiff. 523 U.S. at ___-___, 118 S.Ct. at 1018-20. In so doing, the Court first explained that the "irreducible constitutional minimum of standing" contains three requirements: (1) an "injury in fact," a harm suffered by the plaintiff that is "concrete" and either "actual or imminent," rather than "conjectural" or "hypothetical"; (2) causation, defined as a fairly traceable connection between the complained of injury and the defendant's conduct; and (3) "redressibility--a likelihood that the requested relief will redress the alleged injury." Id. at ___, 118 S.Ct. at 1016-17 (further citations omitted). Turning to the particulars of the complaint, the Court held that none of the requested relief, which included, among other things, demands for civil penalties payable to the United States Treasury and for injunctive relief directed towards possible future violations, would

redress any injury of the plaintiff. Id. at ___, 118 S.Ct. at 1020. More specifically, the Court held that because the civil penalties would be payable to the Treasury, rather than to the plaintiff, they could not be viewed as compensation or redress for the plaintiff's injury. Id. at ___-___, 118 S.Ct. 1018-19. The Court expressly acknowledged that the deterrent aspect of injunctive relief sought would be sufficient to confer Article III standing if the plaintiff had alleged a continuing or imminent violation of the EPCRA. Id. at ___, 118 S.Ct. at 1019. But the Court emphasized that there was no such allegation present, thus leaving nothing to support the requested injunctive relief except the plaintiff's "generalized interest in deterrence," which the Court stated was insufficient for the purposes of Article III. Id.

In Laidlaw, the Fourth Circuit Court of Appeals applied the holding in Steel Co. to a case involving plaintiffs who brought a CWA citizen suit against the defendant for violations of its NPDES permit. The district court in that case assessed $405,800 in civil penalties but declined to grant the injunctive relief sought by the plaintiffs, based on findings that the defendant's violations had not harmed the environment and that the defendant had been in "substantial compliance" with its permit for several years at the time the district court entered its final order in the case. Laidlaw, 149 F.3d at 305. Both sides appealed, the plaintiffs claiming that the amount of the civil penalty imposed by the district court was inadequate and the defendant arguing, among other things, that the plaintiff lacked standing to maintain the suit. Id. Applying the reasoning of Steel Co., the Fourth Circuit concluded that the action was moot because the only remedy then available to the plaintiffs–civil penalties payable to the government–would not redress their injury. Id. at 306-07. Accordingly, the Court of Appeals vacated the district court's order and remanded the case with instructions to dismiss the action. Id. at 307. However, on March 1, 1999, the Supreme Court granted certiorari to review the Fourth Circuit Court of Appeals's decision in the case. See 119 S.Ct. 1111.

BH&T and Vickers have argued to both the Magistrate and to this Court that Steel Co. and Laidlaw show that Franklin lacks standing to pursue his claims for civil penalties. In short, Defendants read these cases broadly to stand for the proposition that citizen-suit plaintiffs do not ever have standing to pursue civil penalties payable to the United States Treasury, because the payment of such

penalties would not redress any injury attributable to plaintiff. At least one court has recognized that Steel Co. might be given such a broad reading, although that court did not decide whether the case should actually be interpreted in such a fashion.   See Dubois v. United States Dep't of Agriculture, 20 F.Supp. 2d 263, 267 n.3 (D. N.H. 1998). This Court does not, however, view the holdings in Steel Co. and Laidlaw as necessarily sounding the death knell for the assessment of civil penalties payable to the government in all CWA citizen suits, as Defendants would argue. In neither Steel Co. nor Laidlaw did the courts consider the precise issue presented here: whether a citizen-suit plaintiff has standing to pursue civil penalties payable to the government where the plaintiff would admittedly have standing to maintain the action in federal court with respect to requested injunctive relief as a deterrent against violations that are allegedly ongoing or imminent. Rather, the courts in Steel Co. and Laidlaw were faced with circumstances where the plaintiffs could not receive the requested injunctive relief they requested because the alleged violations of which they complained had altogether or substantially ceased prior to the entry of a final order.[12] Thus, those cases indicate merely that a citizen suit cannot be maintained where the only relief that might be available to the plaintiff is the payment of civil penalties to the United States Treasury. Indeed, in what appears to be the only reported case to have directly addressed the issue, the court in Natural Resources Defense Council v. Southwest Marine, Inc., 28 F.Supp. 2d 584 (S.D. Cal. 1998), held that where CWA violations are ongoing and a plaintiff's request for injunctive relief to halt such continuing violations is still viable, then that plaintiff still has standing to pursue claims for civil penalties, notwithstanding that they would

---

[12]In fact, it might be argued that the facts in Laidlaw were distinguishable from those in Steel Co. In Steel Co., there were no allegations to indicate any reasonable likelihood of present or future violations by the defendant, thus rendering injunctive relief aimed at remedying such violations completely unavailable. See 523 U. S. at ___, 118 S.Ct. at 1019. By contrast, the district court in Laidlaw found that the defendant had only been in "substantial compliance" with its permit at the time of the court's order, 149 F.3d at 305, thereby suggesting something less than full compliance. And although the district court determined that these violations were relatively minimal and therefore did not warrant the granting of injunctive relief, such relief might have still be an available form of relief had the court seen fit in its discretion to grant it. This might allow the further argument that the plaintiffs had standing under Article III to pursue injunctive relief, and therefore had standing to also pursue civil penalties, as an available remedy under the terms of the CWA. In fact, it would seem quite bizarre that standing can evaporate only after a court enters a judgment.

be paid to the government. While acknowledging that there is some Supreme Court authority suggesting that a standing analysis should be performed as to each form of relief requested by a plaintiff, see 28 F.Supp. 2d at 587 n.3, discussing City of Los Angeles v. Lyons, 461 U.S. 95 (1983), the Southwest Marine court determined that the usual rule is that once a party is able to establish standing to maintain an action in federal court, that party has standing to pursue all available remedies under the CWA. In the absence of any cases directly on point holding to the contrary, and noting that the Supreme Court has granted certiorari in Laidlaw, this Court finds Southwest Marine persuasive, and will overrule Defendants' objections to the Magistrate's report on this issue. Accordingly, the Court will allow Franklin to pursue his claims for civil penalties, at least as long as his requests for injunctive relief in these actions remain arguable. However, if the injunctive relief claim becomes moot (rather than substantially meritless), the court will revisit the issue of standing.

CONCLUSION

Based on the foregoing, BH&T's motion for judgment on the pleadings will be DENIED. The objections to the Magistrate's Report and Recommendations will be OVERRULED.

DONE and ORDERED this 21st day of April 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE